UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────

KATHLEEN PELOW,

                          Plaintiff,

        -vs-                          **No. 6:14-CV-06529 (MAT)**
                                      **DECISION AND ORDER**
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                          Defendant.

─────────────────────────────────

## I.    Introduction

        Represented by counsel, Kathleen Pelow ("plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") partially denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, plaintiff's motion is granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## II.   Procedural History

        The record reveals that on May 22, 2012, plaintiff (d/o/b June 14, 1956) applied for DIB and SSI, alleging disability as of September 1, 2004. After her application was denied, plaintiff

requested a hearing, which was held before administrative law judge Roxanne Fuller ("the ALJ") on December 19, 2013. The ALJ issued a partially favorable decision on February 21, 2014. The Appeals Council denied review of the unfavorable portion of that decision and this timely action followed.

### III. Summary of Evidence

At the time of the ALJ's decision, the record contained sparse evidence for the period prior to 2012. Two statements from plaintiff's treatment providers, one dated 2003 and one dated 2010, indicated that plaintiff had carried diagnoses of OCD and depression for many years. The record indicates that plaintiff treated at Unity Health System ("Unity") for mental health issues during 2006-2007, and that during that time period, she was diagnosed with OCD and dysthymia. In April 2007, plaintiff was given a global assessment of functioning ("GAF") score of 65, indicating some difficulty in social, occupational, or school functioning. See Am. Psych. Ass'n, Diagnostic and Statistical Manual of Mental Disorders–Text Revision ("DSM–IV–TR"), at 34 (4th ed., rev. 2000). The ALJ gave this GAF score "great weight, because there [was] no evidence of positive mental status findings on that date that would support a different and lower assessment." T. 18.

Treatment records from May 2012 through November 2013 indicate that plaintiff was diagnosed with major depressive disorder, OCD,

2

and BPD. She repeatedly reported great difficulty with sleep patterns, stating that she would sleep all day and night to avoid her problems. She often exhibited suicidal ideation. Mental status examinations routinely included abnormal findings, including pressured speech, impaired judgment, depressed affect, vague and passive suicidal ideation, and impaired memory. Symptoms of OCD often interfered with daily activities such as showering and making regular appointments. Plaintiff's medications included Luvox, Wellbutrin, Celexa, Klonopin, and Seroquel.

In August 2012, treating physician Dr. James Horohoe completed a statement indicating that plaintiff carried diagnoses of osteopenia, hypertension, depression, OCD, vitamin D deficiency, vitamin B12 deficiency, and obesity. Dr. Horohoe opined that "her principle source of disability would probably be psychiatric in nature." T. 242. The ALJ gave this opinion "great weight as it [was] consistent with the evidence as a whole." T. 23. However, Dr. Horohoe did not submit any functional assessment.

The record contains only one functional assessment from an examining medical professional, performed by state agency consultant Christine Ransom, Ph.D., who completed an examination on August 28, 2012. Plaintiff reported a history of depression, panic attacks, and OCD. Plaintiff also reported that she ceased treatment with Unity a year prior to her examination and began treatment at Strong Behavioral Health in July 2012. On mental status examination

("MSE"), plaintiff exhibited slow and halting speech; moderately to markedly dysphoric and tense quality of voice; coherent and goal-directed thought processes; moderately to markedly dysphoric, irritable, and tense affect; clear sensorium; orientation to time, place, and person; moderately impaired attention and concentration; moderately impaired immediate memory; average cognitive functioning; and adequate insight and judgment "as she [was] cooperating with treatment as recommended." T. 261.

Dr. Ransom noted diagnoses of panic disorder with agoraphobia, currently moderate to marked; OCD, currently moderate to marked; and major depressive disorder, currently moderate. Dr. Ransom opined that plaintiff could "follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration for simple tasks, maintain a simple regular schedule, and learn simple new tasks." Id. According to Dr. Ransom, plaintiff would have "moderate to marked difficulty performing complex tasks; relating adequately with others and appropriately dealing with stress due to her current diagnoses.

In September 2012, Dr. E. Kamin completed a functional assessment based on his review of the medical record. Dr. Kamin indicated that he considered Listings 12.04 (affective disorders) and 12.06 (anxiety-related disorders). He opined that plaintiff was moderately limited in the ability to: understand and remember detailed instructions; carry out detailed instructions; complete a

normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; and interact appropriately with the general public. Upon review of plaintiff's Title II application, Dr. Kamin found insufficient evidence prior to the date last insured. The ALJ gave this portion of Dr. Kamin's opinion little weight, finding that "the record included evidence of treatment for mental health impairments during this period." T. 20.

After the ALJ's decision, plaintiff's attorney submitted new evidence to the Appeals Council, consisting of mental health treatment notes from Unity, for the time period July 2008 through December 2009. Those records reveal that plaintiff carried a continuing diagnosis of OCD. In July 2008, plaintiff reported family trouble and stated that she was "getting mildly paranoid." T. 365. MSE revealed an apathetic, restless attitude; loud speech; circumstantial thought form; thought processes indicating helplessness, hopelessness, magical thinking, and suspiciousness; depersonalizations and misperceptions; and an anxious and depressed mood. In August 2008, plaintiff's MSE was noted to be unremarkable except for pressured and rapid speech, and she reported that she was "doing much better than at [her] last visit." T. 362. Plaintiff was also noted to be agitated and restless, with restless motor movements; rapid and pressured speech; obsessing thought

form; thoughts of hopelessness, obsessions, and worthlessness; poor concentration; and superficial insight.

In November 2008, plaintiff's affect was constricted on MSE (which examination was otherwise unremarkable), and she reported continued OCD symptoms "including hand washing and checking things. . ." T. 414. In February 2009, plaintiff reported a "low mood," and presented with sad affect, superficial insight, and fair judgment. T. 406. In May 2009, plaintiff again reported poor mood. On MSE, interview behavior was apathetic, thought processes reflected feelings of worthlessness, and affect and mood were depressed. Later that month, plaintiff reported unilaterally decreasing her dosage of certain medications, reporting that she was "doing good," but stating that she had not felt like getting out of bed or showering. T. 399. Plaintiff reported that her anxiety had increased despite taking Klonopin twice a day. On MSE, she exhibited depressed mood and affect. In December 2009, plaintiff reported continued depression and lack of desire to get out of bed, stating that she slept excessively at times. On MSE, her mood was depressed.

## IV.  The ALJ's Decision

The ALJ followed the well-established five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. See 20 C.F.R. § 404.1520. Initially, the ALJ found that plaintiff met the disability insured requirements of the

Social Security Act through December 31, 2009. At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since September 1, 2004, the alleged onset date. At step two, the ALJ found that plaintiff suffered from the following severe impairments since the alleged onset date: obsessive compulsive disorder ("OCD"), anxiety, and depression. The ALJ also found that, as of the "established onset date of disability, May 9, 2012," plaintiff suffered from the following severe impairments: OCD, anxiety, depression, borderline personality disorder ("BPD"), and panic disorder with agoraphobia. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.

Before proceeding to step four, the ALJ determined that, prior to May 9, 2012, plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: she was able to perform only simple, routine, and repetitive tasks; she could have no interaction with the public; and she could have only occasional, superficial interaction with coworkers and supervisors. The ALJ found that, beginning on May 9, 2012, plaintiff retained the RFC outlined above, but that she would also have to be absent four times a month and off task 20 percent of the day in addition to regularly scheduled breaks. After finding that plaintiff could not perform any past relevant work and consulting with a vocational

7

expert ("VE"), the ALJ determined that, prior to May 9, 2012, considering plaintiff's age, work experience, and RFC, jobs existed in significant numbers in the national economy that plaintiff could perform. The ALJ thus found that plaintiff was not disabled prior to May 9, 2012. Beginning May 9, 2012, the ALJ found that no jobs existed in significant numbers in the national economy which plaintiff could perform, and therefore the ALJ found her disabled as of that date.

## V.  Discussion

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhard, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

### A.   New and Material Evidence (Plaintiff's Point 1); RFC Finding (Plaintiff's Point 3)

Plaintiff contends that the Appeals Council erred in rejecting new and material evidence relating to the time period prior to May 2012. The Appeals Council received this evidence into the administrative record, but found that "[w]hile this evidence document[ed] [plaintiff's] allegations and subjective complaints, the mental status examinations during this time period were

8

unremarkable." T. 2. Plaintiff also argues, in a separate point, that the ALJ erred in formulating the RFC assessment in this case because she failed to properly develop the record, relying instead on her own interpretations of the bare medical findings. The Court will consider these two contentions together.

The new evidence became a part of the administrative record when the Appeals Council denied review. See Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996). Where this occurs, "the ALJ's decision, and not the Appeals Council's, is the final agency decision." Lesterhuis v. Colvin, 805 F.3d 83, 87 (2d Cir. 2015). This Court must thus determine whether substantial evidence supports the ALJ's decision, when the new evidence from Unity is included in the administrative record. For the reasons that follow, the Court concludes that, considering the entire administrative record, there is a reasonable possibility that the new evidence would have influenced the Secretary to decide plaintiff's application differently, i.e., to find an earlier established onset date. See Jones v. Sullivan, 949 F.2d 57, 60 (2d Cir. 1991).

The ALJ's decision makes clear that her reasoning for finding an established onset date of May 9, 2012, was based primarily on a lack of medical evidence in the record indicating an earlier onset date for plaintiff's symptoms. More specifically, in finding that plaintiff was not disabled prior to May 9, 2012, the ALJ noted that "there were no mental status exams in the record from that period,"

9

and stated that treatment during that time "appeared to be intermittent." T. 21. This reliance on a lack of evidence is significant, considering that plaintiff supplied new evidence to the Appeals Council consisting of exactly what the ALJ found missing in plaintiff's case. See, e.g., Farrell v. Astrue, 692 F.3d 767, 771 (7th Cir. 2012) (remanding for reconsideration where "new evidence fill[ed] in [an] evidentiary gap[, . . .] relate[d] to the period on or before the date of the administrative law judge hearing decision[,] . . . [and] was new and material evidence that the Appeals Council improperly failed to consider") (internal citations and quotation marks omitted).

Further, although the Appeals Council found that the new evidence submitted by plaintiff revealed only "unremarkable" mental status examinations, upon review of the new evidence, this Court finds that the Appeals Council's assessment was inaccurate. As discussed above, throughout her treatment at Unity, plaintiff not only reported symptoms of OCD which interfered with her daily activities, but also exhibited varying degrees of abnormality across a series of mental status examinations dated July 2008 through December 2009. Accordingly, the Court finds that there is a reasonable possibility that this new evidence would have influenced the ALJ to decide plaintiff's application differently.

Moreover, the Court agrees with plaintiff that it was error for the ALJ to determine plaintiff's RFC for the time frame prior

to May 9, 2012 without proper reliance on any medical opinion of plaintiff's functional capacities. As noted above, the ALJ gave little weight to consulting physician Dr. Ransom's opinion. A review of the ALJ's decision reveals that, while she largely rejected Dr. Ransom's opinion, her RFC finding for the time period prior to May 9, 2012, was based almost exclusively on her own interpretations of the medical findings. Although the ALJ purported to give "great weight" to the GAF score of 65, contained within a single isolated treatment note dated April 2007, this ascription of weight amounted to an improper interpretation of a bare medical finding. See, e.g., Dailey v. Astrue, 2010 WL 4703599, *11 (W.D.N.Y. Oct. 26, 2010) (quoting Deskin v. Comm'r of Soc. Sec., 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008)) ("Although the RFC determination is an issue reserved for the commissioner, "an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence."). Especially considering that the ALJ repeatedly noted the lack of medical evidence in the record prior to May 9, 2012, it was incumbent upon the ALJ to obtain some evidence, in the form of a competent medical source opinion as to functional limitations, rather than relying on her lay interpretation of the record.

This case is thus remanded for consideration of the new evidence. Consistent with the above, on remand, the ALJ is directed to contact plaintiff's treating sources for statements as to plaintiff's functional capacity during the time frame prior to May 9, 2012. If the ALJ is unable to obtain an opinion from a treating source, the ALJ is directed to order consulting opinions as necessary. After considering the new evidence and obtaining at least one opinion from a qualified medical source as to the relevant time frame, the ALJ should reassess her determination of plaintiff's disability onset date.

**B.   Evaluation of Listing 11.06 (Plaintiff's Point 2)**

Plaintiff contends that the ALJ erred in considering Listing 11.04, which addresses affective disorders, but not considering Listing 11.06, which describes anxiety disorders. The Court agrees. Listing 11.06 provides that regarding anxiety disorders, "anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders." The record is replete with evidence that plaintiff suffered from OCD and anxiety-related symptoms associated therewith, as well as symptoms associated with agoraphobia. Yet, noting that plaintiff's representative at the hearing argued that she met Listing 11.04, the ALJ neglected to consider the applicability Listing 11.06. This

was error, as the ALJ is required, at step three, to consider whether plaintiff's medically determinable impairments met the requirements of any applicable listing. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. On remand, the ALJ is thus directed to consider whether plaintiff's condition met the criteria of Listing 11.06. The ALJ should make this determination with reference to the entire administrative record, including the new evidence, as well as any treating or consulting opinions obtained upon remand.

### C.   Credibility Determination (Plaintiff's Point 4)

Having found remand necessary, the Court does not reach plaintiff's argument that the ALJ erroneously assessed plaintiff's credibility. This argument primarily addresses the ALJ's evaluation of the evidence in the record, which will "necessarily be altered" upon the ALJ's consideration of the new evidence and development of the record as directed by this Decision and Order. Crowley v. Colvin, 2014 WL 4631888, *5 (S.D.N.Y. Sept. 15, 2014). Indeed, as plaintiff points out, the ALJ's credibility assessment appeared to turn on the lack of medical evidence in the record relevant to the time frame prior to May 9, 2012. On remand, the ALJ should consider plaintiff's credibility in light of the newly developed record as a whole.

## VI.   Conclusion

For the foregoing reasons, the Commissioner's cross-motion for judgment on the pleadings (Doc. 9) is denied and plaintiff's motion (Doc. 8) is granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**


**S/Michael A. Telesca**
HON. MICHAEL A. TELESCA
United States District Judge

Dated:     December 11, 2015
           Rochester, New York.